UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA,


               -against-                      S8 14 CR 491 (KBF)


ROBERT DEBELLO,

                     Defendant.

-------------------------------------------------------x




## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT ROBERT DEBELLO'S PRETRIAL MOTIONS




JAMES R. FROCCARO, JR.
20 Vanderventer Avenue, Suite 103W
Port Washington, NY 11050
(516) 944-5062 (phone)
(516) 944-5066 (fax)
jrfesq@aol.com (e-mail)

Attorney for Robert DeBello

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------x
UNITED STATES OF AMERICA,


               -against-                         S8 15 CR 491 (KBF)


ROBERT DEBELLO,

                         Defendant.
--------------------------------------------------x



## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT ROBERT DEBELLO'S PRETRIAL MOTIONS

### PRELIMINARY STATEMENT

Defendant Robert DeBello ("Mr. DeBello") respectfully submits this

Memorandum of Law in support of his motion to strike prejudicial surplusage

from the Indictment pursuant to Fed. R. Crim. P. 7(d), and for a severance and

separate trial from co-defendant Salvatore Delligatti pursuant to Fed R. Crim. P.

14(a).  All facts necessary to a determination of these motions are set forth herein.

### STATEMENT OF FACTS

Mr. DeBello is charged in Count One of the Indictment, along with co-

defendants Ryan Ellis and Salvatore Delligatti, with conspiracy to commit RICO

through both a pattern of racketeering activity <u>and</u> the collection of an unlawful

debt.[1]  Mr. DeBello's predicate acts allegedly consist of participating in a

conspiracy to murder "Victim-1"[2] along with Ellis and Delligatti, a conspiracy to

extort a nightclub with Ellis and Delligatti from April through May of 2014, and

the operation of an illegal sports betting and bookmaking operation with Ellis and

Delligatti, between in or about August 2013 and February 2015.   The collection

of an unlawful debt allegedly consists of loans that Mr. DeBello made to three

different individuals which were purportedly usurious under New York State law.[3]

See government's letter dated August 14, 2017, to the Hon. Laura Taylor Swain at

pages 2-3 (ECF Document 395).

The charged enterprise in the racketeering counts is the Genovese

Organized Crime Family, and Mr. DeBello is alleged "at times relevant to the

Indictment" to be a "soldier".  See Indictment at paragraphs 2 and 9(a).  The

---

[1]  Mr. Ellis and Mr. Delligatti are the only other defendants who are scheduled to
go to trial on February 5, 2017, who have not pled guilty.  So, I have only identified the
charges in the Indictment pending against the defendants slated to go to trial first.

[2]  The Indictment identifies this individual as Victim-4, but in other court filings
made by the government, he is identified as Victim-1.  For the sake of consistency and to
avoid any confusion, he is referred to as Victim-1 throughout this memorandum.

[3]  Counts Two and Three charge Mr. DeBello separately, along with
Ellis and Delligatti, with conspiracy to murder and attempted murder of Victim-1 in aid of
racketeering.  Count Five separately charges Mr. DeBello and Ellis and Delligatti with
participating in an illegal gambling operation.  And, Count Six contains a firearms charge
against Mr. DeBello and Ellis related to Counts One through Three.

2

Indictment also states in paragraph 9(a) that:

> In or about 2001, DeBello was arrested on federal criminal racketeering charges filed in the United States District for the Eastern District of New York arising out of his involvement with the Genovese Organized Crime Family, and, in or about 2002, pleaded guilty to conspiracy to commit assault in aid of racketeering in that case.[4] As relevant to this Indictment, DeBello was involved in a murder conspiracy, an attempted murder, an extortion conspiracy, an illegal gambling operation and the collection of an unlawful debt.

The government has previously represented to this Court that the evidence it will adduce at trial with respect to the murder conspiracies involving Victim-1 is that from in or about May through June of 2014, Mr. DeBello and Mr. Ellis and Mr. Delligatti allegedly participated in a conspiracy to murder him in furtherance of racketeering. See government's letter to this Court dated September 26, 2017 (ECF Document 412) at page 2. According to the government, co-defendant Luigi Romano - who recently pled guilty before Your Honor to conspiracy to commit an assault - "offered to pay Mr. Delligatti to have Victim-1 killed for bullying and harassing Romano." Id. And, that "[b]efore acting on Romano's

---

[4] This conspiratorial agreement took place nearly 20 years ago - in the year 2000. No one was ever assaulted or even confronted in connection with that offense. And, Mr. DeBello was ultimately sentenced to a term of probation by Judge Glasser - without objection from the government. A copy of the relevant portion transcript of Mr. DeBello's guilty plea before the Honorable I. Leo Glasser, U.S. District Judge for the Eastern District of New York, is attached hereto as Exhibit A. Other than perhaps a "barroom brawl", Mr. DeBello has no history of engaging any physical violence whatsoever.

3

request to kill Victim-1, Mr. Delligatti allegedly asked Mr. DeBello for permission

to do so, and DeBello purportedly approved the 'hit'. Id.  As the government

alleged:

> Although DeBello authorized the killing of Victim-1, DeBello did
> so on the understanding that Delligatti would carry out the deed himself.
> Instead, however, Delligatti contracted the murder out.

Id.

According to the government, Delligatti purportedly "hired one of his long-

time criminal associates, violent career criminal Kelvin Duke to kill Victim-1 in

exchange for financial compensation to be paid by Romano".[5] Id.  The

government then alleged in its letter to this Court that the evidence it would

adduce at trial regarding the separate murder-for-hire conspiracy, included the

following:

> Kelvin Duke initially attempted to recruit one of his criminal associates
> to carry out the murder.  When that effort failed, Kelvin Duke recruited
> a crew of violent Crips gang members and associates.....from the
> Mitchell Houses in the South Bronx to shoot and kill Victim-1.....
> On June 8, 2014, a crew of hitmen from the Bronx.....were arrested
> in [a] Nissan Altima near the home of Victim-1 in Whitestone, Queens.
> Police recovered the revolver loaded with hollow points, a spray
> bottle with a bleach solution in it, and other evidence in the Nissan

---

[5]  Count Four separately charges Delligatti, alone, with conspiracy to commit
murder-for-hire of Victim-1.  And, Count Seven charges Delligatti, alone, with a firearm
violation charge related to Count Four.  Mr. DeBello is not charged with the conspiracy to
commit murder-for-hire or the firearms violation related to it.

4

Altima....[6]

Id.

During Mr. DeBello's arraignment and initial presentment in the case in May 2016, however, the government actually provided the Court with the *underlying evidentiary basis* for the murder conspiracy charge filed against Mr. DeBello. The government explained to the Court that it planned to call a single cooperating witness at trial, as well as an "expert" on organized crime to "testify that in his experience matters of significant criminal activities like killing somebody, a hit, the hierarchy of the mob or Genovese family, that is something you have to get approved by your superior." And, that this "expert" would testify that because Mr. DeBello was allegedly Delligatti's superior, his opinion is that Mr. DeBello must have approved the "hit".[7] See transcript of bail proceedings held on May 12, 2016 (ECF Document 205) at page 7.

Nearly four months after Mr. DeBello's arraignment and initial presentment in the case, however, the government made a Brady disclosure to the defense

_____

[6] For the sake of brevity, I have not included the government's entire version of the evidence it will purportedly adduce at trial with respect to the murder for hire and related firearm charges.

[7] Assuming the government still plans on offering expert "opinion" testimony at trial on this subject matter, the undersigned will, of course, be moving on behalf of Mr. DeBello to preclude this testimony in accordance with the *in limine* motion practice scheduled previously ordered by this Court.

which served to clearly exculpate Mr. DeBello and others of any involvement in any conspiracy to murder Victim-1.  As the government explained to defense counsel *via* its letter of September 9, 2016:

> Please be advised that following the unsealing of superseding Indictment S4 15 Cr. 491 (LTS) in the case, the Government interviewed a witness ("Witness-1"), who claimed that of all the individuals charged in the S4 Indictment with participating in a murder plot, all of those individuals were involved in the murder plot with the exception of defendants Robert DeBello, Ryan Elllis and Betram Duke.  Robert DeBelo, Ryan Ellis, and Bertram Duke,who, according to Witness-1, were not involved in the murder plot before it was foiled on June 8, 2014.[8]

See government's letter to defense counsel dated September 9, 2016, attached hereto as Exhibit B (emphasis supplied).

Finally, over 24,000 telephone conversations were captured or tape-recorded by law enforcement of the subjects of this investigation, including Mr. DeBello's.  Significantly, the government cannot point to a single conversation which allegedly implicates Mr. DeBello in the murder conspiracy,

---

[8] Prior this Brady disclosure, Bertram Duke was charged, along with Salvatore Delligatti and Luigi Romano with Conspiracy to Commit Murder for Hire, and with Luigi Romano, alone, with the Use of a Firearm in connection with the Murder-for-Hire Conspiracy.  After this Brady disclosure, the government filed the S8 Indictment, which added a new charge against Duke, namely, Misprision of a Felony.  The misprision charge alleged that Duke had knowledge of the actual commission of a felony, namely, the murder-for-hire conspiracy charged in Count Four and had concealed and not made it known to the authorities.  Duke ultimately pled guilty pursuant to a plea agreement with the government to the misprision charge, alone, and was sentenced by Judge Swain to "time-served" in the case.

the extortion conspiracy,[9] an illegal gambling operation, or an "unlawful" debt. Nor is there a shred of physical or documentary evidence linking Mr. DeBello to any these specific crimes.

---

[9] There is no substantive extortion charged anywhere in the Indictment, because no property was ever allegedly taken.

ARGUMENT

POINT I

MR. DEBELLO'S PRIOR CRIMINAL CONVICTION
SHOULD BE STRICKEN FROM THE INDICTMENT

Mr. DeBello moves pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure to strike any reference in the Indictment to his prior arrest and conviction for an offense he committed nearly two decades ago. The government has front loaded this impermissible criminal propensity evidence against Mr. DeBello, by stating in the Indictment, itself, where it clearly does not belong, that Mr. DeBello was previously arrested in the year 2001 on federal criminal racketeering charges, and that in 2002, he pled guilty to conspiracy to commit an assault in aid of racketeering in connection with that prior case. The inclusion of this information in the Indictment will unfairly prejudice Mr. DeBello and should be stricken.

In Old Chef v. United States, the 519 U.S. 172, 180-81 (1997), the Supreme Court defined "unfair prejudice" as "an undue tendency to suggest decision on an improper basis," and invoked as an example a jury's "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or worse, as calling for preventitive conviction even if

8

he should happen to be innocent momentarily).

In <u>United States v. Gatto</u>, 746 F.Supp. 432, 458 (D. NJ. 1990), the Court granted the defendants request to strike from the racketeering count of the Indictment as prejudicial surplusage, any reference to a staged attack on a then police officer so that an associate could appear to rescue the officer and receive favorable treatment on a subsequent criminal sentence. The Court found that the conduct was not charged in the Indictment as either a substantive offense, a predicate act, or overt act in furtherance of any conspiracy charged in the Indictment.[10]

As the Court explained in <u>Gatto</u>, "[t]he preamble should not contain information beyond what is alleged in the counts, nor should it contain

---

[10]    In striking this prejudicial surplusage from the Indictment, the Court also held that:

> [t]he Court rejects the government's attempt to equate admissibility of evidence with proper inclusion in the indictment. The Court need not, at this time, consider whether of such acts is prohibited by Rule 404(b) of the Federal Rules of Evidence (evidence of extrinsic acts to prove propensity for crime) or whether such evidence is unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. The Court finds, however, that the government's reference to the staged attack....in the preamble of the indictment improperly includes allegations not charged in the counts. This information is both prejudicial and inflammatory.

<u>Id.</u> at 458-59,

9

terminology that carries with it connotations of culpable behavior." Id. at 458.

See also, United States v. Mostafa, 965 F.Supp. 2d 451 (S.D.N.Y. 2013)

("[m]otions to strike surplusage from an indictment will be granted only where the

challenged allegations are not relevant to the crime charged and are inflammatory

or prejudicial." (citing United States v. Mulder, 273 F.3d 91, 99 (2d Cir. 2001),

quoting United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990.).

 Here, Mr. DeBello's 2002 conviction is not charged in the Indictment as a

substantive offense, a predicate act, or an overt act in furtherance of any charged

conspiracy. Indeed, the prior offense was committed in the year 2000 - nearly 15

years before any predicate or overt act that Mr. DeBello is alleged to be involved

with in connection with the instant Indictment. The prior offense was also not

committed with any defendant or individual who is alleged to have committed a

specific crime charged in the Indictment before this Court.

 A careful review of the allocution in the 2001 case also reveals the

following - that the Court prefaced Mr. DeBello's allocution by expressly

recognizing that Mr. DeBello was not admitting membership in the Genovese

Family by virtue of his guilty plea, or that the enterprise he was acknowledging

pleading guilty to was the Genovese Family. Mr. DeBello allocuted or plead

guilty to an "association-in fact" enterprise, not the Genovese Family. See

Exhibit A at page 20. Indeed, as Judge Glasser made clear on the record in open

court on October 11, 2002:

> THE COURT: I have been through this I don't know how many
> times. I understand that there is no such thing as a Genovese
> Family [and] that [Mr. DeBello] won't allocute there is.
> I have been all through this. I understand that.

Id.

The government's primary purpose in including a reference to

Mr. DeBello's prior conviction is to suggest criminal propensity at the very start of

the proceedings by including it in the Indictment, itself - because jurors are more

likely to believe that if Mr. DeBello was previously convicted of a prior

conspiracy to commit an assault with a firearm in the year 2002 - then it is more

likely that he is capable and guilty of the similar conduct for which he now stands

trial. That is the inescapable conclusion that any reasonable juror would conclude

from the presence of this highly prejudicial information in the Indictment as set

forth below:

> ....In or about 2001, DeBello was arrested on federal criminal racketeering
> charges filed in the United States District for the Eastern District of New
> York arising out of his involvement with the Genovese Organized Crime
> Family, and, in or about 2002, pleaded guilty to conspiracy to commit
> assault in aid of racketeering in that case. As relevant to this Indictment,
> DeBello was involved in a murder conspiracy, an attempted murder,
> an extortion conspiracy, an illegal gambling operation and the collection
> of an unlawful debt.

<u>See</u> paragraph 9(a) of the Indictment.

For all of the foregoing reasons, I am respectfully requesting that any reference to Mr. DeBello's prior arrest and conviction be stricken from the Indictment.

## POINT II

## MR. DEBELLO SHOULD BE GRANTED A SEVERANCE

The Indictment in this case charges Mr. DeBello with participating
in a conspiracy to murder Victim-1, along with Ryan Ellis and Salvatore Deligatti
in furtherance of racketeering.  The government's evidence of Mr. DeBello's
alleged involvement in this conspiracy was a "very thin reed" even before its
Brady disclosure clearly exculpating Mr. DeBello of any involvement in a  murder
conspiracy with respect to Victim-1.  The Indictment also separately charges co-
defendant Delligatti, alone, with participating in a separate murder-for-hire
conspiracy related to the same victim.

As this Court is no doubt well aware, Rule 14(a) of the Federal Rules of
Criminal Procedure provides the Court with the discretion to order separate trials
if the joinder of defendants for trial appears to prejudice a defendant.   The seminal
case on severance is, of course, Zafiro v. United States, 506 U.S. 534, 539 (1993),
which requires that there be a serious risk that a joint trial could prevent the jury
from making a reliable judgment about the guilt or innocence of a defendant
before a severance is granted.

13

The Second Circuit has repeatedly held that such "prejudice occurs in joint trials when proof admissible against a defendant becomes a part of his trial solely due to the presence of his co-defendant as to whom admission is proper". See United States v. A Salameh, 152 F.3d 88 (2d Cir. 1998), quoting United States v. Cervone, 907 F.2d 332, 341-42 (2d Cir. 1990). A defendant's claim that he was prejudiced by the admission of evidence at a joint conspiracy trial is unsupportable when the evidence would have been admissible against him in a separate trial alone as a member of the conspiracy. Such evidence "is neither spillover nor prejudicial." See United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993). But, that is not the case here.

This case presents a unique situation where Mr. DeBello is not charged in the separate murder-for hire conspiracy related to Victim-1, nor the separate firearm violation related to this charge. The government has already advised this Court, via its letter of September 26, 2017, that the evidence it plans to adduce at trial against Mr. Delligatti with respect to these charges will be substantial and include "real-time wiretap and physical surveillance" which the government alleges resulted in "captured intercepted conversations in which Delligatti discussed the murder plot with Kelvin Duke," and "a meeting in which Delligatti handed Kelvin Duke a brown paper bag containing what was later determined to

14

be a loaded revolver."  And also, that "[o]n June 8, 2014, [a] crew of hitmen from the Bronx (Kelvin Duke and Crips gang members) were arrested in [a] Nissan Altima near the home of Victim-1 in Whitestone, Queens."  And, that the "[p]olice recovered the revolver loaded with hollow point bullets, a spray bottle with a bleach solution in it, and other evidence in the Nissan Altima."  See ECF Document 412 at page 2.   This evidence would not be admissible at a separate trial of Mr. DeBello - who is not charged in the murder-for-hire conspiracy or related firearm charge.

Likening this situation to the standard case in which certain defendants are charged with crimes which other defendants are not charged with in a RICO conspiracy count - will simply not carry the day.  The case at bar differs significantly in that the murder-for-hire conspiracy related to Victim-1, is not part of the racketeering charges in the case.  The spillover prejudice to Mr. DeBello from the introduction of all the "murder-for-hire" evidence at trial will be substantial.  Indeed, it's hard to imagine a situation in which a jury would be called upon to perform greater feats of "mental dexterity" than being asked to consider the evidence introduced against Mr. DeBello and Mr. Deligatti with respect to the conspiracy to murder in aid of racketeering charge for Victim-1. Then, also ask the jury to consider all of the evidence introduced with respect to

15

the murder-for-hire conspiracy for the same victim - but only as to Mr. Delligatti. And, then ask the jury to ignore and put out of their minds altogether all of this murder-for-hire evidence with respect to Mr. DeBello.

This is exactly the type of situation in which the presumption that a jury will adhere to jury instructions fades and a limiting instruction would not suffice to cure the potential for prejudice. The only fair and just remedy here is for Mr. DeBello to be severed and receive a separate trial from Mr. Delligatti.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that defendant Robert DeBello's motions should be granted.

Dated: November 22, 2017
        Port Washington, New York

                              Respectfully submitted,

                                    /JRF/

                        _____

                        JAMES R. FROCCARO, JR. (JRF- 5461)
                        20 Vanderventer Avenue, Suite 103W
                        Port Washington, New York 11050
                        (516) 944-5062
                        (516) 944-5066 (fax)
                        jrfesq61@aol.com (e-mail)

                        Attorney for Robert DeBello